**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Lou Peralta, | No. CV-17-03195-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Worthington Industries Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Jason Peralta's ("Mr. Peralta") Motion to Exclude Dr. Jeff Pfaendtner as an Expert (Doc. 276) and Motion to Amend (Doc. 292), to which Defendants Worthington Industries Incorporated, et al. ("Worthington") filed responses (Docs. 276, 297, respectively). Plaintiff filed a reply to Defendants' response to his Motion to Exclude Dr. Pfaendtner as an Expert (Doc. 301). Also at issue are Defendants' Motion to Preclude Testimony by Andrew Shalaby as a Percipient or Expert Witness (Doc. 281) and Motion to Exclude Plaintiff's Experts (Doc. 282). Plaintiff filed a Notice of Withdrawal of Andrew Shalaby as a witness in response to Defendants' motion (Doc. 295), to which Defendants replied (Doc. 304). Plaintiff also filed a response in the form of a notice of non-opposition to Defendants' Motion to Exclude Plaintiff's Experts (Doc. 300), and Defendants replied (Doc. 305). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I. MOTIONS TO EXCLUDE

### A. Legal Standard

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id. See also Wendell v. GlaxoSmithKline*, 858 F.3d 1227, 1232 (9th Cir. 2017). The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

### B.     Analysis

#### 1.     *Plaintiff's Motion to Exclude Dr. Pfaaendtner*

Plaintiff moves to disqualify Dr. Jeffrey A. Pfaendtner as an expert and exclude all of his testimony. Dr. Pfaendtner is a licensed Professional Engineer and Certified Fire and Explosion Investigator, who wrote two reports for Defendant. In preparing the reports, Dr. Pfaendtner examined the subject cylinder himself, and also relied on records from this litigation and images of the subject cylinder provided by Plaintiff. (Doc. 276-5, Ex. 3 at 11, Pfaendtner Report.) Dr. Pfaendtner's first report, dated March 30, 2019, discusses the results of inspections and tests he performed on both the cylinder that is the subject of the instant case and other "DOT 39" cylinders manufactured by Worthington. (*See generally* Pfaendtner Report.) Mr. Pfaendtner stated that he found no design or manufacturing defects in either the subject or other DOT 39 cylinders and opined that Plaintiff's cylinder fractured "by traumatic mechanical impact." (Pfaendtner Report at 9-10.)

Dr. Pfaendtner wrote a second report, dated April 15, 2019, to rebut the opinions Plaintiff's expert witnesses—Anthony J. Roston and Manuel Marieiro—as outlined in a report prepared by "United Testing Services" ("UTS"). (Doc. 277-2, Ex. B, Pfaendtner Rebuttal.) Dr. Pfaendtner's rebuttal report reiterated the conclusions he reached in his initial report, and also stated that the UTS Report's authors failed to follow the scientific method, rendering any opinions on design or manufacturing defects unreliable. (Pfaendtner Rebuttal at 9.)

Plaintiff argues that Dr. Pfaendtner is an unreliable witness and asserts that his opinions fail to meet the admissibility requirements laid out by Federal Rule of Evidence 702 and *Daubert*. (Doc. 276 at 1.) The Court will assess Plaintiff's arguments under two umbrellas: (1) those arguments that go to Dr. Pfaendtner's qualifications, and (2) those that

go to Dr. Pfaendtner's methodology.[1] Plaintiff does not challenge the relevance of Dr. Pfaendtner's opinions, and finding his opinions relevant, the Court does not reach that part of the *Daubert* analysis.

### a.  Dr. Pfaendtner is Qualified

"Persons with specialized knowledge may testify if their testimony will be helpful to the trier of fact in determining an issue of fact. A witness can qualify as an expert through practical experience in a particular field, not just through academic training." *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).

Plaintiff argues that as a metallurgist Dr. Pfaendtner is "only a metal expert," and is therefore not qualified to opine on the behavior of gases. (Doc. 276 at 3-4.) Defendants contend that Dr. Pfaendtner is, in fact, qualified to opine on the behaviors of gases, because his degrees in Materials Science and Engineering "encompass the chemistry and physical behavior of all materials" and the "physical properties of propane that are in question in Mr. Peralta's incident are elementary and typically taught in undergraduate-level chemistry courses." (Doc. 296 at 8; Pfaendtner Opp. Dec. ¶¶ 2, 4.) In fact, Dr. Pfaendtner has taken courses in chemistry and physics at both undergraduate and graduate levels. (Pfaendtner Opp. Dec. ¶ 2.) Dr. Pfaendtner's experience in the fields of "materials and metallurgical engineering" includes "an understanding of the physical and chemical properties, chemical additives, storage and delivery of fuel gases such as propane." (Pfaendtner Opp. Dec. ¶ 2.)

As a Materials Science/Metallurgical Engineer with a B.S.E. and Ph.D. from the University of Pennsylvania, over 25 years of experience in the field, and 14 years of forensic engineering experience "investigating the causes of fires and explosions that result from fugitive fuel gases" including propane, the Court finds that Dr. Pfaendtner is qualified to testify about the behaviors of gases in this case. (Pfaendtner Opp. Dec. ¶ 2.) *See, e.g.*, *Rogers*, 922 F.2d at 1429.

---

[1] The Court does not address the specifics of many of Plaintiff's challenges, as they are supported by Mr. Roston and Mr. Marieiro's Joint Declaration in Support of Plaintiff's Motion to Exclude Dr. Pfaendtner as an Expert (Doc. 277). Because the Court will grant Defendants' Motion to Exclude Mr. Roston and Mr. Marieiro, which was not opposed by Plaintiff, the statements in the Joint Declaration will not be considered.

- 4 -

       *b.*  Dr. Pfaendtner's Testimony is Supported by Sufficient Facts and Data

The Supreme Court has articulated four non-exclusive factors to consider in assessing an expert's reliability: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; and (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. The Ninth Circuit has also noted that a "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes for testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) ("*Daubert II*").

Plaintiff does not individually engage each of Dr. Pfaendtner's opinions or each of the above factors in the substantive part of his motion, and instead divides his Motion to Exclude into twelve sub-arguments as to why Dr. Pfaendtner is unreliable. The Court addresses Plaintiff's arguments categorically.

Most of Plaintiff's arguments appear to fall under the first *Daubert* factor which the Court addresses in detail below. Thus, as a preliminary matter, the Court briefly addresses the remaining *Daubert* factors. On the third factor, Plaintiff appears to take issue with the absence of a rate of error only with respect to the pressure of the cylinders in impact tests Dr. Pfaendtner performed. (*See* Doc. 276 at 14.) Dr. Pfaendtner explains that the pressure of propane is a function of its temperature, and the "laws of physics" dictate what the pressure will be. (Pfaendtner Opp. Dec. ¶ 24.) While this fact is indicative of a low error rate, it alone is not dispositive.

Without citing any relevant precedent, Plaintiff also argues that almost all of Dr. Pfaendtner's opinions are "improper litigation generated opinions," an argument which intersects with the second and fourth *Daubert* factors. (*See* Doc. 276 at 28.) Where an expert's opinions were "developed . . . expressly for the purposes of testifying," and the

analysis supporting the expert's conclusions has not been peer reviewed, as is the case here, the expert must "explain precisely how [he] went about reaching [his] conclusions and point to some objective source . . . to show that [he has] followed the scientific method as it is practiced by (at least) a recognized minority of scientists in [his] field." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317-19 (9th Cir. 1994) ("*Daubert II*"). As is evident from Dr. Pfaendtner's analysis as described below, his testimony meets this standard.

Turning to Plaintiff's arguments that fall under the first *Daubert* factor, the Court notes that most of Plaintiff's challenges relate to Dr. Pfaendtner's methodology. However, the methodologies Dr. Pfaendtner employed in reaching his conclusions generally go to the weight of the evidence, and not the admissibility. *See Kennedy*, 161 F. 3d at 1231 ("Disputes as to . . . faults in [an expert's] use of [a particular] methodology . . . go to the weight, not the admissibility, of his testimony."). Plaintiff alleges that Dr. Pfaendtner failed to comply with the scientific method as set out by the National Fire Protection Association ("NFPA"). (Doc. 276 at 3.) Defendants maintain that Dr. Pfaendtner did comply with NFPA methodology, because the scientific method requires investigation activities that are directed and informed by empirical evidence, as Dr. Pfaendtner's activities were in the present case. (Pfaendtner Opp. Dec. ¶ 5.) The Court agrees with Defendants. Plaintiff appears to be arguing that because Dr. Pfaendtner did not test each possible theory he did not comply with the scientific method, but, as discussed in more detail below, Dr. Pfaendtner was not required to test each theory for his methodology to be aligned with the scientific method, and therefore sufficient under *Daubert*.

Many of Plaintiff's challenges to both Dr. Pfaendtner's compliance with the scientific method and his methodology in general stem from his alleged "failure" to investigate various theories. (*See generally* Doc. 276.) Plaintiff, citing *Daubert* and *Daubert II* throughout his Motion, but no other relevant precedent, claims that Dr. Pfaendtner's testimony is unreliable because he did not test the viability of the "flare-up" theory (Doc. 276 at 6), the "leak-out rate" theory (Doc. 276 at 8) or examine other

cylinders with braze voids (Doc. 276 at 11). Plaintiff also asserts that Dr. Pfaendtner's testimony is unreliable because the soundbite X-rays were inadequate (Doc. 276 at 9), he did not investigate the cause of the dents in the canister (Doc. 276 at 18), examine Plaintiff's fireplace (Doc. 276 at 19), examine Plaintiff's property in general (Doc. 276 at 20), or sufficiently evaluate the "witness mark" on Plaintiff's torch attachment (Doc. 276 at 21). Plaintiff also alleges that Dr. Pfaendtner "presented incorrect factual assertions without investigating the facts first," in offering his opinion that a set of supposedly defective cylinders were not manufactured by Worthington. (Doc. 276 at 24.)

Turning to Plaintiff's argument that Dr. Pfaendtner's testimony is unreliable because he did not test the viability of the flare-up theory, the Court notes that, as Defendants observe, this theory is not critical to Dr. Pfaendtner's opinion on what caused the steel of Mr. Peralta's cylinder to fracture—it is useful only as a hypothesis for why Mr. Peralta felt heat on his hand, causing him to drop the cylinder. (*See* Doc. 296 at 15.) Plaintiff appears to take issue with the fact that Dr. Pfaendtner did not test the theory himself, instead relying on a conversation he had with Steven Gentry, a former Worthington engineer, who advised him that flare-ups could occur where the torch was held in an inverted position. (Doc. 276 at 8; Doc. 296-3 ¶ 10, Gentry Opp. Dec.) Rule 703 allows otherwise inadmissible evidence to be admissible if the expert opinion is based on "facts or data" that "experts in the particular field would reasonably rely on" in forming an opinion on a subject, so long as the probative value outweighs their prejudicial effect. Fed. R. Evid. 703.[2] Dr. Pfaendtner was familiar with the methods and reasons underlying Mr. Gentry's testing and conclusions. (*See* Pfaendtner Opp. Dec. ¶¶ 6-8.) Even if he was not familiar with the underlying test, as an expert, Dr. Pfaendtner is allowed to rely on otherwise inadmissible hearsay to explain his conclusions. Fed. R. Evid. 703. The Court also does not find this point more prejudicial than probative.

Moreover, Dr. Pfaendtner performed extensive analysis on the subject cylinder. For

---

[2] Several United States Circuit Courts have also ruled that experts may rely on data that they did not personally collect. *See, e.g.*, *Gussak Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 1994).

example, he performed Computed Tomography "CT" X-ray radiographic testing, Scanning Electron Microscope Tests, and conducted a detailed analysis on the steel and braze joints' metallurgical data. (Pfaendtner Report at 3-8.) Through this analysis, Dr. Pfaendtner determined that there was nothing wrong with the subject cylinder's steel, and developed a theory for how the dent occurred, which he states he later corroborated with testing. (Pfaendtner Opp. Dec. ¶ 42.) The fact that Dr. Pfaendtner has not ruled out every possible scenario raised in Plaintiff's motion does not indicate that he failed to comply with the scientific method, nor does it mean that his opinion is unreliable. *See, e.g.*, *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1083 (D. Ariz. 2005).

Plaintiff further alleges that Dr. Pfaendtner contradicts himself in his proffered opinions on whether there were cracks in the subject cylinder (Doc. 276 at 18), and in his opinions on the subject cylinder's compliance with manufacturing requirements because there were voids in the braze joint (Doc. 276 at 9). As Dr. Pfaendtner explained in his declaration, the DOT 39 standard requires "complete penetration," which does not mean the absence of voids. (Pfaendtner Opp. Dec. ¶ 13.) Upon examination of the cylinder, Dr. Pfaendtner says he confirmed that the subject braze joint did flow through the entire extent of the joint. (Pfaendtner Opp. Dec. ¶ 13.) With regard to the "cracks," based on his examination of the cylinder, Dr. Pfaendtner opines that they are instead "strain hardening." (Pfaendtner Opp. Dec. ¶ 44.) The Court finds Dr. Pfaendtner relied on sufficient data in reaching this opinion.

Finally, Plaintiff alleges that Dr. Pfaendtner tested the propane cylinders without knowing the proper specifications when he filled them with vegetable oil and pressurized them to 115 pounds per square inch ("PSI"). (Doc. 276 at 11-17.) Plaintiff's argument stems primarily from the fact that Dr. Pfaendtner did not test whether the subject cylinder's fracture was the result of over-pressurization, but also notes that Dr. Pfaendtner did not take into account the behavior of propane under pressure as compared to the behavior of oil under pressure. (Doc. 276 at 16-17.) Plaintiff's "over-pressurization theory" was not in

the UTS Report, and Plaintiff raises it for the first time in the present motion.³ In conducting his impact analysis, Dr. Pfaendtner relied on the pressure-temperature relationship as documented in many places in scientific literature, including the CRC Handbook of Physics and Chemistry, which rendered it unnecessary to pressure-test every cylinder, or delve any further into the over-pressurization theory. (Pfaendtner Opp. Dec. ¶¶ 24, 27.) The Court finds Dr. Pfaendtner's reliance on these materials to be well within the guidance of *Daubert* and Rule 702. Additionally, like Plaintiff's arguments discussed above, this challenge is heavily rooted in Dr. Pfaendtner's alleged "failures," and those arguments, as well as Plaintiff's observations about the behavior of oil as opposed to that of propane, go to the weight of this evidence, not its admissibility.

Absent any relevant case law or expert testimony to the contrary, the Court finds that Dr. Pfaendtner's opinions are based on sufficient data to meet the Rule 702 standard. Plaintiff's Motion to Exclude Expert Jeffrey A. Pfaendtner is denied. (Doc. 276.)

### 2.    *Defendants' Motion to Preclude Testimony by Mr. Shalaby*

Defendants filed a Motion to Preclude Testimony by Andrew Shalaby as a Percipient or Expert Witness. (Doc. 281.) The Amended Plaintiff's Mandatory Initial Disclosure ("MIDP") lists Mr. Shalaby, Plaintiff's former attorney, as a person with discoverable information, stating that he "[h]as many of the subject products, cylinders and torches, including packaging and test products" and "[h]as various expert reports and contact information for many witnesses from several other cases." (Doc. 281-3, Ex. B). Additionally, Mr. Shalaby asserted in an April 28, 2021 email to the Court that he had disclosed himself as an "all purpose witness."⁴ (Doc. 281-3, Ex. A.)

---

³ The Court does not address the data Plaintiff cites in support of this theory because it was generated by Plaintiff's experts, who will be excluded, and that data also diverges drastically from well-established scientific standards. (*See, e.g.*, Pfaendtner Opp. Dec. ¶¶ 25-27.) Nor does the Court consider the materials Defendants prepared to counter the over-pressurization theory, which were introduced for the first time with their response. (*See* Doc. 296-4, Ex. 2).

⁴ Since the Court revoked Mr. Shalaby's *pro hac vice* admission on January 7, 2020 (Doc. 231, Order), it has repeatedly addressed Mr. Shalaby's unilateral attempts to communicate with the Court and made clear that it will not accept filings or communications from him. (Doc. 234, Order; Doc. 267, Order; Doc. 287, Order.)

Defendants argue that Plaintiff did not properly disclose Mr. Shalaby as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(B) or (C), and that he should be barred as a percipient witness because the MIDP does not reference any matter on which Mr. Shalaby could testify that would constitute admissible evidence. (Doc. 281-1, Mem. at 3–4.) In response, Plaintiff filed a Notice of Withdrawal of Andrew Shalaby as a Witness in This Matter, in which Plaintiff argues that Defendant's Motion to Preclude is moot as a result of Plaintiff withdrawing Mr. Shalaby as a witness (Doc. 295, Notice of Withdrawal.) Defendants filed a Reply, asking the Court to rule on the Motion on the merits given Mr. Shalaby's "continued attempt to improperly interject himself into this case." (Doc. 304 at 2.)

While the Court notes that Plaintiff withdrew Mr. Shalaby as a percipient and expert witness, the Court will rule on this Motion for the sake of clarity, given Mr. Shalaby's history of misunderstanding or attempting to misapply rules and orders in this case. The Court agrees with Defendants that Mr. Shalaby has not been properly disclosed as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(B) or (C). Additionally, the MIDP did not disclose admissible evidence that Mr. Shalaby would testify to as a percipient witness. Thus, the Court grants Defendants' Motion to Preclude Testimony by Andrew Shalaby as a Percipient or Expert Witness. (Doc 281.)

### 3. *Defendants' Motion to Exclude Mr. Marieiro and Mr. Roston*

Defendants move to exclude the testimony of Manuel Marieiro and Anthony Roston, who were retained by Plaintiff to opine as to what caused the steel in Mr. Peralta's cylinder to fail (Doc. 282.) In response to Defendants' motion, Plaintiff filed a notice of non-opposition (Doc. 300).

Mr. Marieiro and Mr. Roston opine that Plaintiff's cylinder had a manufacturing defect, which weakened the steel such that it fractured when subjected to minimal forces. (Doc. 282, citing Marieiro Dep. 92:9-94:1; 107:24-109:5; Roston Dep.71:13-19; 103:2-23; 107:12-108:17.) However, this theory was not discussed in the UTS Report, which Mr. Marieiro and Mr. Roston prepared with Mr. Shalaby, and both Mr. Marieiro and

Mr. Roston admit that it needs further testing. (Marieiro Dep. 37:10-17; Roston Dep. 82:14-83:10; 109:2; *See also* Doc. 282-3, Ex. 5, UTS Report.)

Defendants assert that Mr. Marieiro and Mr. Roston are not qualified to form reliable opinions on the cause of the fracture. (Doc. 282-1 at 9-14.) The Court agrees. Mr. Marieiro did not attend college and owns and operates an auto collision shop. (Doc. 282-1 at 9, citing Marierio Dep. 5:9-14, 19-22). Mr. Roston attended two years of community college, then worked full time as a plumber until he opened a construction management company, which provides project management services for contractors. (Doc. 282-1 at 12, citing Roston Dep. 22:15-23:11, 24:16-25:16.) Both Mr. Marieiro and Mr. Roston have performed expert work exclusively for Mr. Shalaby. (Doc. 282-1 at 9, 12, citing Marieiro Dep. 66:20-22, Roston Dep. 15:9-16:7.)

The Court does not disparage Mr. Marieiro and Mr. Roston, and acknowledges that a witness can qualify as an expert though practical experience in a given field, not just through academic training. *See Rogers*, 922 F.2d at 1429 (9th Cir. 1991). However, Mr. Marieiro and Mr. Roston possess neither relevant education nor practical experience, as they both admitted in depositions. (*See generally,* Doc. 282-1 at 9-14.)

Additionally, Defendants argue that the UTS Report prepared by Mr. Marieiro and Mr. Roston, with the assistance of Mr. Shalaby, is not "good science," as required by *Daubert.* (Doc. 282-1 at 14.) The Court agrees with Defendants on this point as well. There is nothing to show that Mr. Marieiro and Mr. Roston followed the scientific method in preparing the UTS Report. Mr. Marieiro and Mr. Roston have admitted that they don't know if their defect theory is supported by any scientific materials, nor do they know if it's accepted in the scientific community. (Doc. 282-1 at 15-16, citing Marieiro Dep. At 82:2-83:14, Roston Dep. 109:3-9, 110:8-18.) Mr. Marieiro and Mr. Roston have also exhibited a lack of understanding of what participation in a scientific discipline entails. For example, in asserting that the UTS Report was peer reviewed because he, Mr. Marieiro, and Mr. Shalaby went through the report page by page, Mr. Roston revealed that he fundamentally

misunderstands what the peer review process requires. (Doc. 282-1 at 19, citing Roston Dep. 94:3-95:17.)

Defendants also observe that Plaintiff's experts are working on a contingent fee basis, as they will not charge Plaintiff for their services unless he wins at trial or settles the case. In the District of Arizona, such arrangements have been held impermissible, and the testimony of experts retained on a contingency basis has been prohibited. *See Hulstedt v. City of Scottsdale*, No. CV-09-1258-PHX-GMS, 2012 WL 171427 (Jan. 20, 2012, D. Ariz). Thus, even if Plaintiff's experts were qualified to testify and their testimony was deemed reliable, Mr. Marieiro and Mr. Roston would be disqualified as experts on this ground.

Finding Mr. Marieiro and Mr. Roston unqualified to serve as experts in the present case, Defendants' motion is granted. Mr. Marieiro and Mr. Roston are disqualified as experts and the UTS Report is excluded in full.

## II. PLAINTIFF'S MOTION TO AMEND

Plaintiff moves the Court to set aside an Order entered on April 30, 2021 (Doc. 267, Order modified at Doc. 291, Order) pursuant to Federal Rules of Civil Procedure 59 and 60(b). (Doc. 292.) Plaintiff's Motion asks the Court set aside the Order because it is "partially based on the Court's erroneous understanding that Mr. Shalaby has no involvement in this case." (Doc. 292 at 3.) The motion also asks the Court to offer guidance on the "specific activities" Plaintiff's counsel may engage in with Mr. Shalaby. (Doc. 292 at 3.) Defendants responded in opposition to Plaintiff's motion, "based on uncertainty of what is being asked for and a lack of authority for the ambiguous requested relief." (Doc. 297 at 1.)

Federal Rule of Civil Procedure 60(b) provides that "[t]he court may relieve a party . . . from a final judgment, order, or proceeding . . . for any [] reason that justifies relief." However, because Plaintiff challenges an interlocutory order, Rule 60 is of questionable applicability here. Instead, Plaintiff's Motion reads better as a motion for reconsideration

under Local Rule of Civil Procedure 7.2(g).[5] Under either standard, Plaintiff's Motion fails, but even if that were not the case, the Court does not find it necessary to revise its Order.

First, although Mr. Shalaby's status as a witness may have been unclear to the Court at the April 9, 2021 hearing, when the Court said that he was neither a fact witness nor an expert, Mr. Chen's withdrawal of Mr. Shalaby as a witness and the section of this Order excluding Mr. Shalaby as a witness makes any modification of that Order unnecessary. (Doc. 292 at 2, citing Apr. 9, 2021 Tr. 8:1-5.) Second, while the Court recognizes and appreciates Mr. Chen's candor, it understands that some level of communication with Mr. Shalaby is necessary for Mr. Chen's effective representation of Mr. Peralta in the present case. This is because as Plaintiff's former sole counsel, Mr. Shalaby may possess unique knowledge of the history of this litigation which would be helpful to Mr. Chen. While the Court declines to provide Mr. Chen with "specific guidance" as to how he may adhere to the Rules of Professional Conduct, the Court reiterates that Mr. Shalaby is no longer Plaintiff's counsel, which means he may have no role in making decisions about the conduct of this litigation, per Rule 42, Rules of the Superior Court of Arizona, ER1.2, comments 1-3. And as the Court articulated above, Mr. Shalaby is not a witness in this case either. Moreover, the experts retained by Mr. Shalaby have been withdrawn. With these circumstances in mind, it is Mr. Chen's duty as Mr. Peralta's counsel of record to ensure that his actions comport with the Rules of Professional Conduct.

The Court finds that any modification to its prior order is both untimely and unnecessary. Plaintiff's motion is denied. (Doc. 292.)

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion to Exclude Dr. Pfaendtner as an expert. (Doc. 276).

**IT IS FURTHER ORDERED** granting Defendant's Motion to Exclude Mr. Shalaby as a witness (Doc. 281).

---

[5] Under LRCiv 7.2(2), Plaintiff's Motion is untimely because it was filed more than 14 days after the Order that is the subject of the Motion. This deficiency alone warrants denial of the Motion.

**IT IS FURTHER ORDERED** granting Defendant's Motion to Exclude Plaintiff's Experts (Doc. 282).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Amend (Doc. 292).

Dated this 12th day of January, 2022.

Honorable John J. Tuchi
United States District Judge