**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Lou Peralta, | No. CV-17-03195-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Worthington Industries Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Jason Peralta's ("Mr. Peralta") Motion for Partial Summary Judgment (Doc. 278, Pl. Mot.), to which Defendants Worthington Industries Incorporated, *et al.* ("Worthington") filed a Response (Doc. 298, Def. Resp.), and Plaintiff filed a Reply (Doc. 302, Pl. Reply). Also at issue is Defendants' Motion for Summary Judgment (Doc. 283-1, Def. Mot.), to which Plaintiff filed a Response (Doc. 293, Pl. Resp.), and Defendants filed a Reply (Doc. 303, Def. Reply). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

**I.      FACTUAL BACKGROUND**

Mr. Peralta alleges he suffered serious burns while using a torch and cylinder unit manufactured by Defendant to light his fireplace. (Doc. 204 ¶¶ 47, 53 Plaintiff's Second Amended Complaint (SAC).) Mr. Peralta claims he purchased the cylinder and torch in question a few months prior to the incident, and never subjected either component to "any misuse, abuse, alteration, or modification." (SAC ¶ 46; Doc. 284 ¶ 1, Defendants'

Statement of Facts (DSOF); *see also* Doc. 294 ¶ 1, Plaintiff's Contravening Statement of Facts (PSOF).)

Before ever using the cylinder, Mr. Peralta visually inspected the torch and cylinder, and seeing nothing wrong with it, threaded the torch onto the cylinder and ignited it to ensure that it worked. (DSOF ¶¶ 3-4, Deposition of Jason Peralta 17:3-18:12 (Peralta Dep.); *see also* PSOF ¶¶ 3-4). He did not smell propane at this time. (DSOF ¶ 5, Peralta Dep. 18:17-19:4; *see also* PSOF ¶ 5.) Mr. Peralta stored the cylinder in his home and used it as often as ten times per week to light his fireplace and his barbecue during the months leading up to the incident. (DSOF ¶ 7, Peralta Dep. 19:21-20:13; *see also* PSOF ¶ 7.)

On the day of the incident, Mr. Peralta arrived home from work around 4:00pm and shortly thereafter prepared his fireplace for lighting. (DSOF ¶¶ 8-9, Peralta Dep. 25:2-4, 27:2-4; *see also* PSOF ¶¶ 8-9.) To do so, he crumpled up newspaper, placed wood on top of it, and then used the torch to light it. (DSOF ¶ 9, Peralta Dep. 27:2-4; *see also* PSOF ¶ 9.) Before he ignited the torch, he did not smell any propane or notice anything unusual about the torch or the canister. (DSOF ¶ 10, Peralta Dep. 32:14-21; *see also* PSOF ¶¶ 10.)

After using the torch to ignite the paper in the fireplace, while his arm was still in the fireplace, Mr. Peralta felt his hand burning. (PSOF ¶ 11, Peralta Dep. 34:11-22, 32:12-15, 29:18-22). Mr. Peralta believed that he felt his hand burning due to a gas leak in the cylinder, so he threw it to the ground, turned his back from the fireplace, and attempted to run away. (PSOF ¶ 12, Peralta Dep. 34:23-35:15; *see also* DSOF ¶ 12.) Mr. Peralta believes he "probably saw the flame" coming out of a location other than the tip of the torch, but the cylinder did not feel like it was "trying to fly out" of his hand. (PSOF ¶¶ 13, 14, Peralta Dep. 30:18-25, 92: 7-17.) Nor did Mr. Peralta hear anything out of the ordinary—before he was injured, the only thing he heard was "the torch working." (PSOF ¶ 15, Peralta Dep. 79:23-24).

Mr. Peralta testified that as soon as the cylinder hit the ground it "blew up," and there was a "ball of fire," which he attempted to escape by running towards his girlfriend's voice. (DSOF ¶ 16, Peralta Dep. 36: 11-21; *see also* PSOF ¶ 16.) Mr. Peralta does not recall

whether he saw the cylinder strike the floor. (DSOF ¶ 16, Peralta Dep. 35:13-24; *see also* PSOF ¶ 16.)

After the incident, Mr. Peralta got in a cold shower, and his girlfriend went to purchase burn care supplies. (DSOF ¶ 17, Peralta Dep. 42:7-12; *see also* PSOF ¶ 17.) That night, Mr. Peralta dressed the wounds, assisted by a friend who runs a wound care facility. (DSOF ¶ 18, Peralta Dep. 42:13-19; *see also* PSOF ¶18.)

Mr. Peralta brought the present action in September 2017. (*See* Doc. 1.) In Mr. Peralta's Second Amended Complaint he claims Defendants are liable for his injuries under both a product liability negligence and a civil battery theory. (SAC ¶¶ 45-65.) Mr. Peralta now moves for summary judgment on a strict liability theory, which he did not plead in either his initial complaint or Second Amended Complaint, and Defendants move for summary judgment on both of Mr. Peralta's claims.

## II.     LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question

of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

#### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves the Court for partial summary judgment, arguing that Defendants are liable for his injuries as a matter of law, due to a manufacturing defect in the cylinder. (*See generally* Pl. Mot.) Plaintiff's motion rests on a theory of strict liability. (*See, e.g.*, Pl. Mot. at 1.)

As Defendants correctly observe, Plaintiff has never pleaded a strict liability claim in this action before the instant motion, and previously alleged only negligence and civil battery. (Def. Resp. at 1; *see also* SAC ¶¶ 45-58.) Defendants are also correct that Federal Rule of Civil Procedure 8(a)(2) requires that a Plaintiff's complaint provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Courts may not grant summary judgment on claims not pled in a plaintiff's complaint. *Hasan v. E. Washington State Univ.*, 458 F. App'x 169, 171 (9th Cir. 2012).

Because Plaintiff brings a new claim for the first time at summary judgment, his motion is denied. (Doc. 278.)

**B.     Defendants' Motion for Summary Judgment**

**1.     *Claim One: Negligence***

District courts apply state law to products liability claims brought in federal court pursuant to diversity jurisdiction. *Adams v. Synthes Spine Co.*, 298 F.3d 1114, 1117 (9th Cir. 2002). To establish a *prima facie* negligence case in Arizona, a plaintiff must show: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.2d 228, 230 (Ariz. 2007). Expert testimony is required whenever proof of an element of a claim calls for information that is outside an ordinary person's common knowledge. *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference).

In *Dart,* the Arizona Supreme Court articulated the test for negligent design or manufacture, which Plaintiff alleges in its Second Amended Complaint (SAC ¶ 56). *See Dart v. Wiebe Mfg., Inc.* 709 P.2d 876, 880-81 (Ariz. 1985). "For a plaintiff to prove negligence he must prove that the designer or manufacturer acted unreasonably at the time of manufacture or design of the product. This test is nothing more than the familiar negligence standard." *Id.* (internal quotations omitted). In evaluating a negligence claim, evidence of a defect alone is not sufficient—there must also be evidence of unreasonable conduct on the part of the defendant. *See Phila. Indem. Ins. Co. v. BMW of N. Am., LLC*, No. CV-13-01228-PHX-JZB, 2015 WL 5693525, at *16 (D. Ariz. Sept. 29, 2015).

At summary judgment, the moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants argue that Plaintiff has not demonstrated Worthington failed to take reasonable precautions in designing a safe product or failed to act reasonably at the time of design or manufacture.

- 5 -

1  (Def. Mot. at 8.) Defendants assert that there "is simply nothing in the record regarding
2  Defendants' *conduct*." (Def. Mot. at 9).

3  If the moving party meets its initial burden, the opposing party must establish the
4  existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v.*
5  *Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In his response to Defendants' Motion
6  for Summary Judgment, Plaintiff argues that he has presented evidence of Defendants'
7  negligence based on the consumer expectation test, because he has shown that the cylinder
8  was unreasonably dangerous. (Pl. Resp. at 2-3.)

9  In short, the consumer expectation test asks whether "the product has failed to
10 perform as safely as an ordinary customer would expect when used in an intended or
11 reasonable matter." *Dart*, 709 P.2d at 879. However, even the case Plaintiff relies on to
12 advance his argument that the consumer expectation test is applicable here suggests the
13 opposite. *See id.* at 880. The *Dart* Court, drawing a distinction between strict liability and
14 negligence analysis for product liability cases, noted that negligence cases are more
15 concerned with the conduct of the defendant, while strict lability cases are more concerned
16 with whether a product is unreasonably dangerous. *Id.* As the Court articulated in its
17 analysis of Plaintiff's Motion for Partial Summary Judgment, *supra*, this is not a strict
18 liability case, and therefore the consumer expectation test is ill-suited for application to
19 these facts. Rather, courts in negligent design cases must "assess the reasonableness of the
20 manufacturer's choice of design in light of the knowledge available at the time of design
21 or manufacture." *Golonka v. General Motors Corp.*, 65 P.3d 956, 962 (Ariz. 2003).

22 Absent any evidence of unreasonable conduct from which a juror could conclude
23 that Defendants "failed to take reasonable precautions in designing a safe product or
24 otherwise failed to act unreasonably at the time of design or manufacture in light of the
25 foreseeable risk of injury from use of the product," Plaintiff has failed do demonstrate that
26 there is a genuine dispute of this material fact. *See Phila. Indem. Ins. Co.*, 2015 WL
27 5693525, at *16 (granting summary judgment for defendants on the plaintiffs' negligence
28 claim where the plaintiffs did not disclose evidence of the design process or any other

unreasonable conduct). Therefore, summary judgment for Defendants on Plaintiff's negligence claim is appropriate.

### 2. *Claim Two: Civil Battery*

In Arizona, a battery claim requires a plaintiff to prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur. *Johnson v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000).[1]

In his Complaint, Plaintiff alleges that Defendants committed civil battery when they produced and sold the subject torch and cylinder with actual knowledge that the products were defective (SAC ¶ 56). Not only do Defendants contend that Plaintiff cannot prove they acted with actual knowledge, but without expert testimony, they argue that he cannot prove the presence of a defect that caused Mr. Peralta's injuries either. (Def. Mot. at 14-15, 8-11.) In his response, Plaintiff argues that he has established that there was a defect, and this is sufficient to sustain the civil battery claim. (Pl. Resp. at 9-10.)

Both Defendants and Plaintiff gloss over the fact that battery is an "intentional tort," and therefore requires the requisite level of legal intent.

> Under Arizona law, "the act that caused the harm will qualify as intentional conduct only if the actor desired to cause the *consequences*—and not merely the act itself—or if he was certain or substantially certain that the *consequences* would result from the act." In this respect, Arizona law follows the principle from the Restatement (Second) of Torts that: "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F. 3d 1195, 1210 (9th Cir. 2016) (quoting *Mein ex rel. Mein v. Cook*, 193 P.3d 790, 794 (Ariz. Ct. App. 2008)) (emphasis in original). In their arguments challenging Plaintiff's negligence claim, Defendants noted that there "is simply nothing in the record regarding Defendants' *conduct*." (Def. Mot. at

---

[1] Despite its independent research, the Court was unable to find a case in either the District of Arizona or Arizona state court where a civil battery claim was brought in the context of a products liability action. Although no Arizona court has recognized such a claim in this context, the Court nonetheless proceeds with its analysis.

- 7 -

9; *see supra*). Without any evidence of Defendants' conduct at all, there cannot be a genuine issue of material fact as to whether Defendants' conduct was intentional. Thus, summary judgment on Plaintiff's civil battery claim is proper.

Moreover, even if proof of a defect that caused Mr. Peralta's injuries were sufficient on its own to sustain the civil battery claim, there is still insufficient evidence to create a genuine issue of material fact. *See Anderson*, 477 U.S. at 249 (holding that there is no issue for trial unless there is sufficient evidence favoring the non-moving party). Where "evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-250 (citations omitted). A plaintiff cannot create a genuine issue for trial based solely upon subjective belief. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

Plaintiff contends that a jury can conclude that Mr. Peralta's cylinder was defective for several reasons. First, Plaintiff claims that the fact that Mr. Peralta felt his hand burn after igniting the torch must have been due to fuel leak establishes a defect. (Pl. Resp. at 5.) Second, Plaintiff argues that a defect is proven by the fact that the cylinder ruptured "from being thrown or tossed from a height of less than 21 inches." (Pl. Resp. at 7.) Third, Plaintiff asserts that because the "fracture groove failed to properly activate," the cylinder was defective. (Pl. Resp. at 8.) Finally, Plaintiff argues that the cylinder was over-pressurized, which indicates a defect. (Pl. Resp. at 8.) Plaintiff also argues that expert testimony is not necessary in this case, because these issues are within the common understanding of jurors. (Pl. Resp. at 9, citing *Johnson v. Costco Wholesale Corp.*, 827 F. App'x. 637, 639 (9th Cir. 2020) (holding that the issue of whether a guardrail on a conveyor belt was high enough to hold a wine bottle was within the common understanding of jurors).)

However, none of the evidence Plaintiff cites is sufficient to warrant a denial of summary judgment. As a preliminary matter, the Court addressed Plaintiff's "over pressurization theory" in its analysis of Plaintiff's *Daubert* Motion to Exclude Dr. Pfaendtner. (Doc. 307, Order.) This theory was introduced for the first time in

Plaintiff's *Daubert* Motion and is based on data generated by Plaintiff's experts. The Court excluded both Plaintiff's experts and their report. (*See* Doc. 276 at 16-17, Plaintiff's Motion to Exclude Dr. Pfaendtner; Doc. 307 at 9, Order.) Thus, the Court does not consider Plaintiff's over-pressurization argument.

Plaintiff's remaining arguments go to causation—a defect existed, which in turn caused Mr. Peralta's injuries. Mr. Peralta's arguments in support of the presence of a defect are highly technical, but the evidence on which he relies is circumstantial. In Arizona, courts limit reliance on circumstantial evidence to prove a defect to situations where the product in question is unavailable or otherwise incapable of inspection. *Phila. Indem. Ins. Co.*, 2015 WL 5693525, at *15 (holding that although a vehicle was available for inspection, the elements at issue had been destroyed by a fire, so plaintiffs could rely on circumstantial evidence). Plaintiffs must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference. *Claar*, 29 F.3d at 504.

Here, the torch and cylinder were available for inspection, so this is not the kind of case where Plaintiff may rely on circumstantial evidence to prove a defect. In fact, the torch and cylinder were indeed inspected by Plaintiff's experts, Manuel Marieiro and Anthony Roston, who have since been excluded, as well as Defendants' expert, Dr. Pfaendtner. Additionally, this is not the kind of case where the issues are within the common understanding of the jurors. For their part, Defendants point to Dr. Pfaendtner's testimony. Dr. Pfaendtner not only opined that there was no defect, but his proffered testimony on the cylinder also directly contradicts each of Plaintiff's theories that purport to establish the presence of a defect. (Def. Mot. at 13, Def. Reply at 6-8.) Although the Court has sympathy for Mr. Peralta, the fact that he was injured does not speak for itself. Plaintiff must be able to produce some reliable evidence of a defect that caused his injury for the Court to send this case to a jury. *See Cox v. Yamaha Motor Corp.*, No. CV-06-519-TUC-DCB, 2008 WL 2328356 (D. Ariz. June 4, 2008) (granting summary judgment for defendant manufacturer on the ground that that no reasonable jury could find a defect in a motorcycle's suspension where all experts testified that there was no defect). Without supporting evidence,

Plaintiff's claims are mere speculation. Defendants are thus entitled to summary judgment on Plaintiff's claims against them.

**IT IS THERFORE ORDERED** denying Plaintiff's Motion for Partial Summary Judgment (Doc. 278).

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment. (Doc. 283).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in favor of Defendants and close this case.

Dated this 13th day of January, 2022.

Honorable John J. Tuchi
United States District Judge