1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9  | Jason Lou Peralta, | No. CV-17-03195-PHX-JJT |

10 |        Plaintiff, | **ORDER** |

11 | v. | |

12 | Worthington Industries Incorporated, et al., | |

13 |        Defendants. | |

14

15        On May 29, 2022, attorney Andrew W. Shalaby ("Shalaby") filed a motion to

16 disqualify the assigned judge in this case, Judge Tuchi, based on allegations of bias. (Doc.

17 324.)  In response, Judge Tuchi asked that the motion be resolved by a randomly selected

18 judge.  (Doc. 326.)  The Court has now carefully reviewed Shalaby's motion and the

19 lengthy docket in this case.  For the following reasons, the motion is denied.

20                        **RELEVANT BACKGROUND**

21        In September 2017, Plaintiff Jason Lou Peralta ("Plaintiff"), who at that time was

22 represented by Shalaby, filed this action.  (Doc. 1.)  Shalaby is a California-based attorney

23 who applied for, and was granted, *pro hac vice* status at the outset of the case.

24        On December 4, 2017, Judge Tuchi oversaw the Rule 16 conference and also held

25 oral argument on a pending motion to dismiss/strike the complaint. (Doc. 32.) Judge Tuchi

26 then issued the scheduling order, which, among other things, disallowed the filing of

27 written discovery motions and instead required the parties to present discovery disputes via

28 a written joint summary prepared after meeting and conferring.  (Doc. 33 at 3.)

On December 8, 2017, Judge Tuchi held a hearing to resolve a discovery dispute that was discussed during the Rule 16 conference.  (Doc. 39.)  One of the issues was the issuance of a protective order.  (Doc. 48 at 29.)  Shalaby stated he did not object to a protective order but wanted a provision added that would allow him to share confidential information from this case in other cases.  (*Id.* at 29-31.)  Judge Tuchi denied the request and authorized the protective order in the form the Court ordinarily uses.  (*Id.* at 32.)

On January 16, 2018, Shalaby filed[1] a "Request for Discovery Dispute Conference Pertaining to Protective Order," reasserting his request to make use of confidential information from this case in other cases.  (Doc. 50.)  Defendants responded that the motion was "really a motion for reconsideration in disguise" and opposed it.  (Doc. 51.)

On January 18, 2018, Judge Tuchi denied the motion and ordered Defendants to file "a joint proposed Protective Order conforming to the Court's prior directive."  (Doc. 52 at 2.)

That same day, Shalaby filed a document entitled "Request for Formal Order Regarding Protective Order."  (Doc. 55.)  Among other things, Shalaby interpreted Judge Tuchi's order as requiring him to stipulate to the protective order and requested relief from the stipulation requirement.  (*Id.*)  Shalaby also suggested that Judge Tuchi had ruled incorrectly during a previous discovery-dispute hearing, which Shalaby characterized as "an informal discovery conference" that was not "formally preserved for appellate review."  (*Id.*)

On January 22, 2018, Judge Tuchi issued an order denying these requests.  (Doc. 57.)  The order explained (1) that *Defendants* had been ordered to file a protective order and Plaintiff had never been ordered to stipulate to it; and (2) that every "determination of this Court, whether issued orally or from the bench, is a formal order with the full force of law," such that Shalaby's belief that he must seek a "formal order" following a ruling from

---

[1]     The filing was styled as a personal letter from Shalaby to the Court.  Although all of Shalaby's filings during the time he represented Plaintiff are considered to be on Plaintiff's behalf, this order, which involves Shalaby's conduct both during and after his representation of Plaintiff, will dispense with the legal fiction of stating that "Plaintiff" filed the various filings at issue in this order.

the bench to preserve the right to appellate review was "mistaken." (*Id.* at 1-2.) The order then stated as follows:

> Plaintiff's briefing raises the Court's concerns about Plaintiff's counsel, Andrew Shalaby. Counsel's briefing thus far in this matter reflects a lack of understanding both of this Court's orders and federal practice and procedure in general. It is self-evident, both as a practical matter and by the terms of a protective order, that the purpose and intent of such order is to facilitate fair disclosure of sensitive and competitive information by protecting that information from disclosure or use for any purpose other than the matter at bar. Plaintiff's repeated requests to the contrary—to allow his counsel free use of Defendant's sensitive information subject to the protective order in any other litigation he chooses or may choose in the future—is anathema to the purpose of the order. And as the Court set forth at the December 8, 2017 hearing, it is highly improper for Plaintiff to seek an order from a court in the District of Arizona that would bind or delimit what is discoverable in any other action, whether in this district or any other. This should be obvious, yet Plaintiff's counsel persists in his course, wasting counsel's time in preparing such motions, Defendant's counsel's time and money in preparing the required responses, and the Court's time in reviewing the briefing and preparing orders such as this one.
>
> These shortcomings may implicate an inability by counsel to effectively represent the interests of his client in this matter. In particular, the Court holds concern that counsel's continued attempt to litigate the language of the protective order in this matter—wherein counsel's only attorney-client relationship-based duties run to advance the interests of client Jason Peralta's interests—so that it benefits clients in other matters presents a very real potential conflict of interest under ER 1.7, Rule 42 of the Supreme Court of Arizona. The Court will monitor this issue moving forward.

(*Id.* at 2-4.)

Later that day, Shalaby filed a "Notice of Temporary Illness of Plaintiff's Counsel," stating that "the Court is correct in identifying my confusion on its order issued today" and that he had been "diagnosed with a cardiac condition" the previous month and had been "placed on certain medications that cause temporary impairment and confusion." (Doc. 58 at 1-2.) Shalaby asked the Court to forgive his impairment, which he hoped would be "temporary and for a short run." (*Id.* at 2.)

Nevertheless, on March 1, 2018, Shalaby filed a motion for reconsideration of the Court's January 22, 2018 order. (Doc. 64.) Shalaby explained that a different judge in a different case pending in a different court had issued an order denying Shalaby's motion for reconsideration of a vexatious litigant prefiling order, and in so doing, the judge had noted that "Shalaby appears to have a history of disrespecting court orders," citing various

judges' orders, including Judge Tuchi's.  (*Id.* at 2-3.)  Shalaby found this "upsetting."  (*Id.* at 3.)  He requested that Judge Tuchi enter an order retracting the statement that "Plaintiff's briefing represents a fundamental misunderstanding of how the Court operates" and further requested "that the Court not utilize the informal discovery telephonic conference procedure in this case anymore" and "that we follow the formal motion procedure going forward."  (*Id.* at 9.)

Shalaby then filed various motions to amend (Docs. 68, 70), requests for judicial notice (Docs. 66, 75), "status reports" (Docs. 76, 77), and a motion for hearing (Doc. 79).

On July 17, 2018, Judge Tuchi denied the motion for reconsideration of his January 22, 2018 order and Shalaby's request to alter the discovery dispute procedure laid out in the case management order, denied the motion for a hearing, and dismissed the complaint for failure to properly allege diversity jurisdiction, granting leave to amend.  (Doc. 83.)

On August 7, 2018, Shalaby filed Plaintiff's first amended complaint ("FAC"). (Doc. 88.)

On November 28, 2018, Shalaby attempted to raise a discovery dispute by filing a 13-page declaration of an expert witness (Doc. 93) and a letter to the Court requesting a hearing that stated, "[s]hould the Court want to familiarize itself with the nature of this discovery dispute, kindly see document 93 filed today."  (Doc. 94.)

On November 30, 2018, Judge Tuchi issued an order noting that Shalaby's recent filings failed to comply with the discovery-dispute procedure set forth in the case management order and warning Shalaby that "any future filings, whether dealing with purported emergent or urgent circumstances or not, which do not comport with the applicable rules of this Court's prior orders, shall be stricken."  (Doc. 95 at 2.)  Judge Tuchi then noted that "the purpose of the Scheduling Order's requirement of a joint notice of discovery dispute" had been "thwarted," leaving him "without the benefit of both sides' positions on the dispute," and ordered Defendants to respond.  (*Id.*)  Defendants responded. (Doc. 97.)  Then Shalaby filed a motion for leave to file a formal discovery motion.  (Doc. 98.)

On December 11, 2018, Judge Tuchi held a hearing, in which he again addressed the discovery dispute process:

> [M]y preference, developed over the years, and the preference of several of my colleagues on this bench, is to start with the practice that I advised you of at the scheduling conference here, which is that if the parties have a discovery dispute that cannot be resolved in its entirety by a meet and confer, that they should jointly file a document simply alerting me to the fact that there is a discovery dispute, and then priming the Court by giving me a page on each side's position so that I can then have them on the phone. Which is intended to save you all money and time, travel time and your client's money, and allows me to get responsive and iterative progress on sussing out what the discovery dispute is.
>
> Because unlike the written motion practice, with a telephonic conference or an in-person conference I can ask you questions about things that are still gaps in my knowledge of the facts that you're laying forth or my lack of understanding of something. You can answer those questions, and based on those answers I may have more questions. And it gets me to a point where I feel I'm able to make an informed decision on the discovery dispute much more quickly and much more cheaply.
>
> There are times, as I've indicated, where a written motion, response and reply practice might make sense. But I don't think it makes sense to start there all the time.
>
> The point is to start with that which is the simplest for you, the cheapest for your clients, and the most efficient for your time and the Court's time. That's why it is the standard practice in this Court that I've described to you.
>
> [ . . . ]
>
> The process issue that I need to get to is this – and Mr. Shalaby, I'll address this directly to you because you've stated in your writings to me, and in particular in this last at docket entry number 98, you're concerned that there's not an adequate record for appeal of any discovery decision if we do things the way this Court does it.
>
> All I can tell you is, sir, that is not the case. The record for appeal is the transcript of everything that goes on in any hearing, as well as anything that is filed. But the Court rules from the bench based on argument presented by the parties all the time; at trial on evidentiary issues, sometimes at dispositive motion hearings, although rarely, sometimes at motions to dismiss and things like that.
>
> And the record is what the record is. And that is part of the – part and parcel of the ruling or the order that may become appealable. And it is the basis, and it is adequate for a court to review on appeal. That's why my practice is what it is. It is in the service of the efficiency and minimization of expenses to the parties that is called for in Rule 1 of the Federal Rules of Civil Procedure.

(Doc. 115 at 4-7.)

1          In the meantime, the case was referred to Magistrate Judge Willett, who was

2   randomly drawn for the purpose of conducting a settlement conference (Doc. 101) in

3   accordance with the parties' stipulation (Doc. 96).   Judge Willett set the settlement

4   conference for June 10, 2019.  (Doc. 106.)  After Shalaby filed a motion to expedite the

5   settlement conference (Doc. 117), Judge Willett held a status conference to discuss the

6   timing of the settlement conference (Doc. 137).  Afterward, Judge Willett affirmed the June

7   10, 2019 date, based on the parties' submissions.  (Doc. 147.)

8          On March 22, 2019, Shalaby filed a motion to cancel the settlement conference

9   because, during confidential settlement negotiations in a different case pending before a

10  different court, an attorney who served as defense counsel in both that action and this one

11  conditioned settlement of that case on Shalaby not receiving attorneys' fees.  (Doc. 155.)

12         On March 29, 2019, Defendants filed a motion to revoke Shalaby's *pro hac vice*

13  admission.  (Doc. 158.)

14         On July 10, 2019, following full briefing (and then some),[2] Judge Tuchi held a

15  hearing on the revocation motion.  (Doc. 210.)

16         On January 7, 2020, Judge Tuchi issued a 40-page order granting Defendants'

17  motion to revoke Shalaby's *pro hac vice* status.  (Doc. 231.)  A detailed summary of this

18  order is necessary here because it provides much of the foundation for the current dispute:

19         ▪ The order begins by noting that Shalaby himself once "suffered a serious burn

20  while using a Bernzomatic gas-fueled torch manufactured by the Worthington Defendants'

21  predecessors in interest" and that Shalaby thereafter filed a series of unsuccessful lawsuits

22  in state and federal court in California based on that injury.  (*Id.* at 2-4.)  Eventually, Judge

23  Battaglia of the U.S. District Court for the Southern District of California entered a

24  "vexatious litigant pre-filing order" against Shalaby that was upheld by the Ninth Circuit

25  in 2014 and remains in place to this day.  (*Id.*)

26         ▪ Next, the order notes that Shalaby filed a different benzene torch lawsuit on behalf

---

[2]        On July 2, 2019, Judge Tuchi resolved 12 pending motions, including a motion to
27  allow Defendants to file a surreply to Plaintiff's unauthorized surreply.  (Doc. 203.)  This
28  order also granted a stipulation to file a second amended complaint ("SAC") (filed at Doc.
204).

of a client in 2016 in the U.S. District Court for the Northern District of Illinois.  (*Id.* at 4-6.)  In February 2019, the judge in that case (Judge Reinhard) issued a 48-page order revoking Shalaby's *pro hac vice* application on the grounds that (1) Shalaby had made misrepresentations in his *pro hac vice* application regarding a 2015 order in a different case in which a bankruptcy judge (Judge Johnston) determined that Shalaby had committed sanctionable misconduct; (2) Shalaby had made several factual misrepresentations in the course of seeking the recusal of the magistrate judge assigned to his case in the Northern District of Illinois; (3) Shalaby had repeated those misrepresentations regarding the magistrate judge in filings in other matters; and (4) Shalaby had been less than truthful in his *pro hac vice* application by failing to mention the sanctions order issued by Judge Johnston and the vexatious litigant order issued by Judge Battaglia.  (*Id.*)  Afterward, the Seventh Circuit upheld the revocation order and chastised Shalaby for misrepresenting the law.  (*Id.*)

▪ Next, the order discusses Shalaby's litigation conduct during the first two-plus years of this case.  (*Id.* at 6-8.)  Specifically, the order notes that (1) in his *pro hac vice* application, Shalaby avowed under penalty of perjury that he was not "currently the subject of a disciplinary investigation or proceeding by any Bar or Court" and had never "been disbarred from practice in any Court"; (2) the docket in this case includes over 100 docket entries "relate[d] either to Plaintiff's attempts to re-litigate aspects of the matter on which the Court already has ruled—cardinally the scope of discovery—or to Mr. Shalaby's attempts to put before the Court what he believes to be substantive evidence underlying his arguments for a finder of fact on the ultimate issue of liability in this matter"; and (3) a few weeks after Shalaby's *pro hac vice* admission was revoked in the Northern District of Illinois, Shalaby propounded discovery requests in this matter that were intended "to assist in his defense against Judge Reinhard's revocation order."  (*Id.*)

▪ Having established these background facts, the order next discusses whether Shalaby violated any applicable standards of professionalism and/or rules of professional responsibility.  The order concludes that Shalaby committed the following violations: (1)

he violated the prohibition against making unfounded accusations of impropriety (Standards for Professional Conduct, No. 4) by creating and maintaining website that identified, by name, various lawyers who are purportedly "dishonest and do not care that others have been injured and killed by these products," including defense counsel in this case (*id.* at 8-11); (2) he repeatedly violated the duty of candor to the tribunal (ER 3.3) via his "failure to disclose the requested prior discipline and any pending discipline, both at the time of application for *pro hac vice* admission to this Court, and thereafter on a continuing basis" (*id.* at 11-19); (3) he twice violated the prohibition against conflicts of interest (ER 1.7), first by seeking to cancel the settlement conference in this matter because a settlement offer in the Northern District of Illinois matter contained a term that was unfavorable to him personally, and then again by using the discovery process in this matter to seek information that was relevant only to the Northern District of Illinois matter (*id.* at 19-27); (4) he repeatedly violated the duty of competence (ER 1.1) by, *inter alia*, exceeding applicable page limits, displaying "a basic inability to understand rudimentary procedure and litigation practice," filing motions while a stay was in place, and attempting to relitigate settled issues (*id.* at 27-33)[3]; and (5) he violated the duty to promptly report the imposition of discipline by other courts (LRCiv 83.2) by failing to report the various orders of the Southern District of California, the Northern District of Illinois, and the bankruptcy court (*id.* at 33-35).

▪ Finally, the order addresses whether, in light of these findings, Shalaby's *pro hac vice* admission should be revoked. (*Id.* at 35-40.) As an initial matter, the order notes that Judge Reinhard's order revoking Shalaby's *pro hac vice* admission in the Northern District of Illinois would, due to its "detailed description of Mr. Shalaby's actions and behavior involving false statements" and "sound analysis of the legal and ethical implications of those actions," provide "sufficient basis standing alone to revoke Mr. Shalaby's admission in the instant matter." (*Id.* at 35.) Nevertheless, the order goes on to identify other reasons

---

[3]     The order separately expressed concern about Shalaby's "own repeated acknowledgement that he is suffering from a combination of physical and mental issues that call his competence to represent Mr. Peralta in this matter into question." (Doc. 231 at 31.)

why Shalaby's *pro hac vice* admission should be revoked, including "the specific violations found above" and "the findings of other courts, including the Southern District of California in issuing its pre-filing order, and more recently its contempt citation for violating that order; the Northern District of California Bankruptcy Court in issuing its own consequences; and to a lesser extent the orders of the Seventh Circuit and the JPMDL [United States Judicial Panel on Multidistrict Litigation]; all of which noted actions or patterns of actions by Mr. Shalaby that demonstrate failures to follow rules and orders, and/or misrepresentations to the court on issues of fact or law." (*Id.*) The order concludes:

> Upon consideration of all of the above, as well as Mr. Shalaby's responses to the Order to Show Cause and his presentation at the OSC hearing, the Court finds that revocation of Mr. Shalaby's *pro hac vice* admission in this matter is warranted. The fact that his conduct in the [Southern District of California] matter, which resulted in . . . the pre-filing order nearly eight years ago, mirrors closely his conduct as observed by all of the other courts listed above in the ensuing years, and was present in the instant action as well, demonstrates that it is unlikely to change, and continued admission on this matter with other lesser sanctions are wholly unlikely to drive compliance with the ethical rules, the Local Rules or this Court's Orders.

(*Id.* at 35-36.) Finally, the order notes that "[t]his is not a decision the Court undertakes lightly. The Court understands the serious professional consequences to an attorney for being so disciplined . . . . It so orders only after the conclusion, announced above, that a lesser sanction will not suffice." (*Id.* at 37.)

Following the issuance of the revocation order in January 2020, attorney David Chen ("Chen"), who first appeared as Plaintiff's counsel in late 2018 (Doc. 100), took the lead in the representation of Plaintiff. In July 2020, Chen represented Plaintiff at a settlement conference, but a settlement was not reached. (Doc. 244.)

A few weeks later, Shalaby sent a settlement-related letter to Judge Willett, who had overseen the settlement conference, but Judge Willett "reject[ed] the correspondence and forward[ed] it unopened to counsel for Plaintiff for any action deemed appropriate" in light of the fact that Shalaby was "not counsel in the case or a named party." (Doc. 247.)

In August 2020, Defendants filed another motion related to Shalaby. (Doc. 248.) The motion noted that, in the case in the Northern District of Illinois, Shalaby had

continued participating in the case in an indirect manner following the revocation of his *pro hac vice* status by acting as "personal counsel" for the plaintiff's experts, including appearing at and defending their depositions.  (*Id.* at 2.)  The motion further noted that, through an email exchange with Chen, Defendants' counsel had learned that "Mr. Shalaby is planning to act as the personal counsel for Plaintiff's experts Roston and Marieiro in this matter, just as he is attempting to do in the [Northern District of Illinois] matter."  (*Id.* 3.)  The motion sought to bar Shalaby from doing so.  (*Id.*)

In October 2020, after Plaintiff failed to respond, Judge Tuchi issued an order granting the motion to preclude Shalaby from acting as Plaintiff's experts' personal counsel.  (Doc. 250.)  In addition to noting that the motion could be granted under the Local Rules based on Plaintiff's failure to respond to it, the order explained that the motion should be granted on the merits because, *inter alia*, "[t]he notion of an expert witness in a civil matter having, and consulting with, his or her own counsel in the course of a deposition is very curious, even without the added ingredient of that counsel having been disbarred previously in the matter."  (*Id.* at 2.)

The next relevant Shalaby-related development occurred on December 8, 2020, when Shalaby sent an unsolicited email to Judge Tuchi's chambers.  (Doc. 253 at 2-3.)  Among other things, the email "request[ed] permission to sit and listen to the deposition of Worthington's expert Jeff Pfaendtner, scheduled for 12/11/2020" because Shalaby considered himself "more familiar with the expert evidence then the others involved and would be able to identify improper expert evidence and opinions if introduced."  (*Id.*)  In response, Judge Tuchi issued an order on December 9, 2020 that simply notified the parties of this development and clarified that the Court would "take no action on this email absent a motion from one or more of the parties."  (Doc. 253 at 1.)

Nevertheless, Shalaby continued to contact Judge Tuchi.  On April 30, 2021, Judge Tuchi issued an order that Shalaby "shall cease all attempts to communicate with the Court on this matter."  (Doc. 267 at 4.)  The order noted that between December 9, 2020 and April 30, 2021, Shalaby "sent eight more communications to the Court, including emails

1    and physical mailings. The emails appear to be copied to counsel for Defendant, but not to

2    counsel for Plaintiff; the Court is unaware whether the mailing also was sent to either

3    party." (Doc. 267 at 1.)  Judge Tuchi determined that:

4            Mr. Shalaby's continued attempts to influence the Court and the direction of
             this matter make clear that the prohibitions of the many local and federal
5            rules at issue are not obvious to him. The Court will clarify: The Court has
             revoked Mr. Shalaby's admission before the District of Arizona, so he is not
6            counsel for Plaintiff in this matter.  Nor is he a party in this matter.  He
             therefore holds no status under which the Court will recognize his ability to
7            communicate with it on this matter.  The Court will not consider any
             communications to it from Mr. Shalaby in this matter.  If Mr. Shalaby
8            attempts to communicate with the Court about this matter again, the Court
             will proceed as appropriate under LRCiv 83.1(e).
9

10   (*Id.* at 2.)

11           It appears that, even after the issuance of this April 30, 2021 order, Shalaby

12   continued attempting to participate in the case by filing materials with the Clerk of Court

13   and/or sending emails to Judge Tuchi's chambers.  As a result, on May 24, 2021, Judge

14   Tuchi issued an order that provided as follows:

15           The Court has spent a great deal of time and effort attempting to patiently
             explain to Mr. Shalaby that because he is not a party to the instant matter,
16           and this Court having revoked his admission pro hac vice to appear as
             counsel in this matter[,] [h]e has no role in the matter and no standing to
17           attempt to participate in the litigation of the matter.  Mr. Shalaby continues
             undeterred, repeatedly disregarding not only the Court's Orders but also the
18           Federal Rules of Civil Procedure, the Local [R]ules of Practice for the
             District of Arizona and now the Federal Rules of Appellate Procedure.
19
             IT IS ORDERED directing the Clerk of Court that it shall accept no
20           communications from Mr. Shalaby in relation to the instant action, in
             whatever form he may attempt to submit them. The Clerk and chambers staff
21           shall return any mailings from Mr. Shalaby or his firm unopened and shall
             similarly dispose of any emails from Mr. Shalaby or his firm.
22

23   (Doc. 287.)

24           On January 13, 2022, Judge Tuchi issued an order granting Defendants' motion for

25   summary judgment.  (Doc. 308.)  That same day, the Clerk of Court entered judgment in

26   Defendants' favor, seemingly bringing this case to a conclusion.  (Doc. 309.)

27           One day later, on January 14, 2022, Shalaby sent an email to Judge Tuchi's

28   chambers stating that he was representing Plaintiff on appeal and also planned to appeal

the revocation of his *pro hac vice* admission.  (Doc. 310 at 1.)

On January 18, 2022, Judge Tuchi issued an order clarifying that, notwithstanding the previous orders revoking Shalaby's *pro hac vice* status and barring the Clerk from accepting any future filings from Shalaby, Shalaby would be allowed to file a notice of appeal and a request for any transcripts needed to pursue an appeal.  (Docs. 310.)  On January 24, 2022, Judge Tuchi issued another order allowing Shalaby to use the Court's electronic filing system ("ECF") for appellate-related documents only.  (Doc. 312.)

On January 24, 2022, Shalaby filed a notice of appeal.  (Doc. 313.)

That same day, Judge Tuchi issued an order explaining that Shalaby sent emails to his chambers "requesting that the Court give him unrestricted filing status so he can file post-judgment motions in this district court matter."  (Doc. 314 at 1.)  Judge Tuchi denied this request, explaining that the recent order authorizing Shalaby to file a notice of appeal "did not rescind the revocation of his *pro hac vice* status in the District of Arizona. . . .  If counsel of record for Plaintiff, David Chen, wishes to file post-judgment motions that he has prepared and for whose content he is responsible, he may do so."  (*Id.*)  The order further prohibited Shalaby from engaging in "any further attempts to communicate with this Court, by e-mail or otherwise, about this case":

> After more than four years, a lengthy and exhaustive Order revoking Mr. Shalaby's pro hac vice admission to this Court and explaining precisely why, and eight subsequent Orders repeatedly explaining that Mr. Shalaby is not counsel, nor expert witness nor party in this matter, he may not participate in its litigation in any form, the Court has exhausted its patience.  Should Mr. Shalaby ignore this Order and send further e-mails or other communication about this matter, the Court will not respond to or considerate in this matter.

(*Id.* at 2) (citations omitted).

On April 12, 2022, Shalaby violated this order by sending an email to Judge Tuchi's chambers in which he "respectfully mov[ed] for readmission PHV so that [he could] file a post-judgment Rule 60 motion on behalf of Mr. Peralta in relation to the pending appeal." (Doc. 321 at 2.)

On April 21, 2022, Judge Tuchi issued an order that provided as follows:

Mr. Shalaby has again violated this court's Orders prohibiting him from

1
2
3
4

    communicating with the Court on behalf of Plaintiff in his district court matter.  Now Mr. Shalaby seeks readmission pro hac vice to this Court to 'file a post-judgment Rule 60 motion on behalf of Mr. Peralta in relation to the pending appeal.'  (See attached email.)  Plaintiff is represented in the district court matter by Mr. Chen.  If Plaintiff in fact requires any matters addressed by filings in this Court, he may do so through his admitted counsel, Mr. Chen.  The Court having revoked Mr. Shalaby's admission pro hac vice upon a finding of cause in this matter, it will not reverse course.

5

(*Id.* at 1.)

6
7

    On April 27, 2022, Chen filed a motion to withdraw as Plaintiff's counsel with Plaintiff's consent.  (Doc. 322.)  This motion was granted.  (Doc. 323.)

8
9

    On May 29, 2022, Shalaby filed the motion now pending before the Court—a motion to disqualify Judge Tuchi based on allegations of bias.  (Doc. 324.)

10
11

    On June 1, 2022, Judge Tuchi issued an order referring the motion to a randomly assigned judge.  (Doc. 326.)[4]

12

### DISCUSSION

13
14
15
16
17
18

    Shalaby seeks the disqualification of Judge Tuchi under 28 U.S.C. § 455(a) and (b)(1).  (Doc. 324 at 2.)[5]  Shalaby argues that the "strain of the attorney-judge relationship began" in January 2018 when Shalaby "called into question the validity of [Judge Tuchi's] Chamber rule dispensing with discovery motions," prompting Judge Tuchi to make "angry," "derogatory," and 'unjustifiably inflammatory" statements suggesting that

19
20
21

---

[4]    Shalaby has since filed a motion for reconsideration of Judge Tuchi's rulings related to his *pro hac vice* status and filing privileges.  (Doc. 327.)  That motion is now fully briefed.  (Docs. 329, 330.)  The undersigned judge takes no action on this motion because it falls outside the scope of the referral order, which relates only to the disqualification motion.

22
23
24
25
26
27
28

[5]    Shalaby asserts that "Judge Tuchi should not rule on the motion, but instead, the matter should first be reassigned as a matter of law."  (Doc. 324 at 2.)  The motion, however, relies solely on 28 U.S.C. § 455 as the basis for recusal.  That provision is "directed to the judge, rather than the parties, and is self-enforcing on the part of the judge"—it invokes the judge's "duty to recuse himself" and "includes no provision for referral of the question of recusal to another judge."  *United States v. Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980).  If a *party* wishes to seek a district judge's recusal, an affidavit can be brought pursuant to 28 U.S.C. § 144, which provides that the "judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  "Although the substantive test for bias or prejudice is identical in sections 144 and 455, the procedural requirements of the two sections are different."  *Sibla*, 624 F.2d at 867.  Shalaby never explicitly invoked § 144, and even if his declaration (Doc. 324 at 11) combined with his request for the assignment of another judge to hear the motion could be construed as implicitly invoking § 144, the procedural requirements of that section are not met.  Nevertheless, the motion having been referred, the undersigned judge will resolve it.

Shalaby was "insubordinate."  (*Id.* at 2-3.)  According to Shalaby, judges in the Northern District of Illinois improperly used Judge Tuchi's January 2018 statements against him to make their own "factually inaccurate and disparaging statements about Shalaby," which Judge Tuchi then relied upon in circular fashion to revoke his *pro hac vice* status.  (*Id.* at 3-5.)  Next, Shalaby argues that "[e]vidence of Judge Tuchi's dislike towards Shalaby (i.e. prejudice) is ample" from the January 2020 revocation order, both because of the content of the order and because it was issued "without any order to show cause or opportunity to respond," and that these considerations "facially prove Judge Tuchi's prejudice to the point where recusal was mandatory under 28 USC § 455(b)(1)."  (*Id.* at 5.)  Next, Shalaby argues Judge Tuchi's April 30, 2021 order, which reaffirmed that Judge Tuchi would not consider any future email communications from Shalaby, revealed "prejudice beyond dispute" because it was legally incorrect and issued without adequate prior notice.  (*Id.* at 5-6.)  Next, Shalaby argues that Judge Tuchi's actions also interfered with his ability to be heard and to file a notice of appeal.  (*Id.* at 6-7.)  Next, Shalaby argues that Judge Tuchi's January 2022 orders, which allowed him to file a notice of appeal, were also legally flawed and also issued without adequate prior notice.  (*Id.* at 7-8.)  According to Shalaby, "the anger and prejudice Judge Tuchi bore towards him caused all parties to this action to waste an inordinate amount of time . . . .  Shalaby believes Judge Tuchi is aware he cannot by law prevent a party impacted by an adverse order from filing a motion for relief from that order, yet out of anger and prejudice, has refused to abide by the law by striking Shalaby's efforts."  (*Id.* at 8-9.)  Shalaby also accuses Judge Tuchi of making "a latent threat" to dismiss the action if Plaintiff continued to communicate with Shalaby and of making "slanderous accusation[s] about Shalaby."  (*Id.* at 9.)  Shalaby concludes by arguing that Judge Tuchi must have known that his rulings were legally incorrect, which in turn qualifies as "a clear show of a prejudice which rises to the level that mandates self-recusal." (*Id.* at 10.)

Shalaby's disqualification request is denied.  As an initial matter, the motion is procedurally impermissible and violates clear and repeated court orders.  By the time

Shalaby filed this motion in May 2022, his *pro hac vice* status had been revoked for over two years, such that, as a non-party to the suit, he had no standing to seek disqualification of the judge presiding over it.  If Plaintiff's remaining counsel, Chen, had filed a motion to disqualify Judge Tuchi—presumably while the case was still being litigated[6]—such a motion would warrant consideration on its merits.  But once Shalaby was no longer Plaintiff's counsel, he had no right to file a motion seeking Judge Tuchi's recusal.  This was true even before he was expressly ordered, multiple times, to stop attempting to participate in this case (except with respect to appellate matters).  Shalaby was granted limited access to ECF "for appellate-related documents only" (Doc. 312) and has been otherwise prohibited from filing motions with the district court.

At any rate, the motion fails on the merits.  The disqualification provisions invoked in Shalaby's motion, 28 U.S.C. § 455(a) and (b)(1), only require recusal when a judge's "impartiality might reasonably be questioned" or when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  Thus, "to state a successful case for recusal, . . . a party must allege bias or prejudice stemming from an extrajudicial source."  *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1581 (9th Cir. 1989).  Here, Shalaby does not allege any bias or prejudice stemming from an extrajudicial source, such as a personal interest in the litigation or exposure to extrajudicial information, and nothing would cause an objective observer to reasonably question Judge Tuchi's impartiality or conclude that Judge Tuchi harbors bias or prejudice against Shalaby.

At most, Judge Tuchi has (like many other judges) made adverse rulings against Shalaby that include criticisms of the underlying litigation conduct that gave rise to the adverse rulings.  But as the Ninth Circuit has emphasized, "judicial rulings alone almost

---

[6]     *In re Anwiler*, 958 F.2d 925, 930 (9th Cir. 1992) ("When the evidence on which a motion to disqualify is based is known beforehand, waiting until after the case . . . has been decided before bringing a disqualification motion raises the spectre of judge shopping. Imposing a timeliness requirement prevents a waste of judicial resources.  If there is no such requirement, a party can wait until the trial or appeal is over and if unhappy with the result then bring the motion to disqualify.").

never constitute a valid basis for a bias or partiality motion, and expressions of impatience, dissatisfaction, annoyance, and even anger alone are insufficient to establish bias or partiality." *United States v. McChesney*, 871 F.3d 801, 807 (9th Cir. 2017) (cleaned up). This rule applies with particular force in cases in which a sanctioned litigant or attorney seeks the recusal of the judge who issued the sanctions order—to the extent the underlying order includes language criticizing the sanctioned party, such language is often necessary to explain the basis for the order and is not, on its own, proof of impermissible bias and prejudice. *See, e.g., Forte v. Schwartz*, 791 F. App'x 674, 675 (9th Cir. 2020) ("The judge's imposition of a Fed. R. Civ. P. 11 sanction for filing a request 'filled with offensive commentary' and the referral of Forte for criminal contempt proceedings . . . were rulings on matters before the court and did not show that the judge's impartiality might reasonably be questioned."); *Matter of Yagman*, 796 F.2d 1165, 1181-82 (9th Cir. 1986) ("[T]here is no support in the record for the claim that Judge Real was personally biased or prejudiced against Yagman. . . . [A]lthough it is obvious that Yagman and Judge Real clashed several times during the trial over various objections, evidentiary matters, and rule violations, we find none of it remarkable enough to indicate a need for Judge Real to disqualify himself from deciding the issue of sanctions. A judge may impose sanctions such as those at bar on his or her own initiative. When this occurs, the judge will obviously be dissatisfied with some aspect of the offending attorney's conduct. Often the judge may be angry with the attorney for violating one or more rules. Without more, this natural responsive attitude does not provide reasonable grounds to question the judge's impartiality, either because of the appearance or the fact of bias or prejudice, in presiding over the sanctions proceeding."). *See generally Liteky v. United States*, 510 U.S. 540, 550-51 (1994) ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . . Impartiality is not gullibility. Disinterestedness does not mean child-

like innocence.  If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.") (citation and internal quotation marks omitted).

Moreover, having carefully reviewed the docket, the Court is struck by the patience and restraint that Judge Tuchi displayed when dealing with repeated violations of clear, unambiguous orders by an attorney whose similar conduct in other cases has prompted other judges to restrain his litigation and filing privileges.  The challenged orders are replete with passages that an objective observer would view as evidence of fairness and even-handedness, not bias and anger.  (*See, e.g.,* Doc. 231 at 25 ["Mr. Shalaby [has a] close personal connection to his burn clients' experiences due to his own experiences both suffering burns and litigating over that injury.  The Court does not minimize these circumstances, and understands how traumatic burn injuries and their long—even lifetime—aftermaths can be, both in terms of physical pain and psychic trauma.  But it is clear that Mr. Shalaby's closeness to the issue has affected him so profoundly as to impact his performance of duties in serving his client in this case, and has eroded his judgment, perspective and circumspection about conflicts and other issues in this case, however good his intentions may be."]; *id.* at 37 ["This is not a decision the Court undertakes lightly. The Court understands the serious professional consequences to an attorney for being so disciplined . . . ."]; Doc. 287 at 1 ["The Court has spent a great deal of time and effort attempting to patiently explain to Mr. Shalaby that because he is not a party to the instant matter, and this Court having revoked his admission pro hac vice to appear as counsel in this matter . . . [h]e has no role in the matter and no standing to attempt to participate in the litigation of the matter."].)

As for Shalaby's contention that his *pro hac vice* status was revoked "without any order to show cause or opportunity to respond" (Doc. 324 at 5), this is simply false.  The revocation order was issued only after full briefing of Defendants' motion requesting this exact relief, additional briefing after Shalaby filed an unauthorized surreply, and a hearing. (Doc. 210.)  Following the revocation of Shalaby's *pro hac vice* status, he was no longer

allowed to participate in the action because he was not a party and no longer represented one.  Thus, Shalaby is wrong in his contention that he somehow deserved to have a "charging document, such as an order to show cause" (Doc. 324 at 5) before Judge Tuchi could enter orders attempting to stop Shalaby from continuing to participate in litigation in which he had no right to participate.

Finally, Shalaby's contention that Judge Tuchi "issued an injunction order, purporting to restrain the non-party Andrew Shalaby from communicating with the entirety of the Federal Court" (*id.* at 6) is also false.  Judge Tuchi ordered that Shalaby "shall cease all attempts to communicate with the Court *on this matter.*"  (Doc. 267 at 4, emphasis added.)  When Shalaby repeatedly violated that order, Judge Tuchi ordered the Clerk of Court of the District of Arizona to "accept no communications from Mr. Shalaby *in relation to the instant action.*"  (Doc. 287, emphasis added.)  Later, Judge Tuchi again ordered that Shalaby was prohibited "from any further attempts to communicate with this Court, by e-mail or otherwise, *about this case.*"  (Doc. 314 at 2, emphasis added.)  The orders were limited in scope to this action only.

Accordingly,

**IT IS ORDERED** that Shalaby's motion for disqualification (Doc. 324) is **denied**. Dated this 25th day of July, 2022.

Dominic W. Lanza
United States District Judge

- 18 -